## G. W. WATSON *v.* THE STATE.

1. CRIMINAL LAW. *New trial. Severance. Probable injustice.* When a defendant has been denied the benefit of certain testimony by reason of a refusal of the trial judge to grant a severance, and it can be seen that probable injustice has been done the defendant by depriving him of the said testimony, a new trial will be granted.

2. FALSE PRETENSE. *Conviction of. Good when.* A conviction under an indictment charging a conspiracy to obtain money under false pretenses would be good, although a bond, the leading means used, was not signed, nor purported to be signed by any one, and could not have deceived any reasonable man, upon close inspection.

### FROM SHELBY.

Appeal in error from the Criminal Court of Shelby County. A. H. DOUGLASS, J.

T. A. RYAN and GEORGE GANTT for Watson.

ATTORNEY-GENERAL LEA for the State.

FREEMAN, J., delivered the opinion of the court.

The defendant is indicted and convicted of a conspiracy to obtain money by false and fraudulent pretenses and representations, and sentenced to a fine, by the verdict of the jury, of $250, from which judgment he has appealed to this court. The pretenses are elaborately set out in the indictment, and sustained by the testimony of the defendant.

They are, substantially, that defendant and one Welsh engaged in the conspiracy to obtain money from one Blades, at the Kansas City railroad depot, in Memphis, Tennessee, by Welsh pretending to Blades he had a large amount of goods to be shipped on the train of that day to Kansas City, the defendant, in pursuance of the previous understanding, coming into the cars during the conversation, and claiming to be the general freight agent of the railroad company, notifying Welsh that by the rules of the road, the goods could not be shipped unless the freight was prepaid, and demanding the money at once. Welsh stated his money was in his trunk in the baggage car, and he would have to get it from the trunk to meet the unexpected demand; whereupon, the pretended freight agent, the defendant, urged he was too much pressed with business to wait for this. After some discussion, all tending evidently to carry out the deception, Welsh produced a bond for a $1,000 on a mining

company in Bluff City, Montana, or purporting to be such, and requested the assumed freight agent to cash it, but he claimed he did not have that much money about him and could not do it. Blades was then applied to, both parties representing the bond to be perfectly good, and that any bank in Memphis would cash it, but he declined. Welsh then wanted him to advance him seventy-five dollars on it and hold it as collateral, and even was so liberal as to offer to return the money in fifteen minutes, we believe, all of which was declined by Blades. He seems to have suspected the character of the parties from the first, and says he kept his hand on his pocket-book all the time, and did not go so far as to read the supposed bond. The parties left the car when they found no money could be had. A policeman was told, very soon after they left, of the transaction, and Welsh was arrested; the bond, or one corresponding, was found on him, and he has been convicted on plea of guilty, and is now serving out his term in the work-house. The defendant was arrested sometime after in the city of Memphis, by a policeman or detective, after an effort to escape, when he noticed he was being observed by the detective.

The bond is a printed one, but not signed by any president or other officer of the company, nor are any of the coupons attached so signed, and if examined on its face could not have deceived any man of ordinary sagacity.

The defendant filed an affidavit, with a very urgent application for a severance, in which he denied

his presence on the occasion alluded to.; states his whereabouts, and gives parties who reside at Little Rock, who could probably prove what he alleges. He urgently insists it is a case of mistaken identity. And it must be confessed that there is, from the whole record, some grave suspicions that this view is well founded. His main ground for severance is, that there would be testimony against his co-defendant Welsh, that would be competent as to him, that would tend to incriminate this defendant, and yet might be excluded if they were separately on trial, and in addition, that Welsh would be a witness for him, and would swear he was not the party who was present, and that he never knew him till after his arrest. Welsh's affidavit is also found in the record, after his own conviction, in which he swears most positively defendant was not the other party present at the interview with Blades. Other circumstances serve to corroborate the truth of this statement, as shown in the record.

While this is not a very strong case for severance and for overruling the discretion of the criminal judge, under the principle of the case of *Morrow and Bellamy* v. *State,* 14 Lea, 481, and other cases in our books therein cited, where the ends of justice demand such severance, and, we may add, where we can see that probable injustice has been done the party by the refusal, we think a new trial should be granted, to enable the party to get the testimony of which he has been deprived by the action of the court.

It is a question of doubt, on the whole evidence

in this record, as to whether this is not a case of mistaken identity, and we will feel better satisfied to have the case reinvestigated. As the case must go back for a new trial, it is proper to decide the question presented in argument as to whether, on the facts of the case, the bond being in fact unsigned by any one, on the principle of various cases for obtaining money or other things under false pretenses, a conviction could be had at all for the conspiracy charged in the indictment, the theory of this defense being, that the bond, the leading means intended to be used, could not have deceived, in fact, any reasonable man.

The misdemeanor of a conspiracy by our Code, section 5583 (M. V.), may be committed by two or more persons, conspiring, among other things, "to cheat and defraud any person of any property, by means in themselves criminal, or by any means which would amount to a cheat, or to obtain money by false pretenses." We think the means agreed on and attempted to be put into effect in this case, to-wit, the representation, among other things, that one of the parties was a freight agent, the other had goods to be shipped, and that the bond produced was perfectly good and would be cashed by any bank in Memphis, is certainly a conspiracy to obtain money under false pretenses and representations intended to be relied on by the party to whom made. The fact that the bond would have failed to deceive if closely examined, only shows that the means to be used might have been ineffective. The parties took the chance of success, the conspiracy to do this was complete, and whether

the means to be used would prove a success or not is not material. They were equally guilty, whether they failed or succeeded. They had conspired to effect the forbidden end.

We therefore hold, if the case is made out by satisfactory legal proof, the party might be convicted.

Reverse and remand.